## CUTLER MAIL CHUTE CO. v. CAPITAL MAIL CHUTE CORPORATION.

### No. 352.

District Court, E. D. New York.

Feb. 5, 1940.

Carl P. Goepel, of New York City, for plaintiff.

William Weisman, of New York City (Percy Freeman, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is an action for the alleged infringement of Patent No. 1,907,906 issued to Stanley V. Van Riper, Assignor to Cutler Mail Chute Co., for Mail Chute, granted May 9th, 1933, on an application filed April 27th, 1932. All of the Claims of the Patent, Numbers 1 to 9, both inclusive, are in suit.

Defendant answered, setting up the usual defenses of invalidity and non-infringement, and further defenses including prior knowledge and public use.

At the trial the defendant apparently discarded all other defenses as to invalidity and relied upon the defense that "all the claims of the patent are merely for an old combination of old parts and that it required nothing but mechanical skill, if anything, to produce all that plaintiff had produced in this patent".

Plaintiff is the owner of the Patent in suit.

The notice required by law was given before this action was commenced.

The alleged infringement by the defendant is confined to a single structure of the defendant (Exhibit 2), which is a prototype of those installed in the Press Association Building of Rockefeller Center, which were made in Brooklyn, in the Eastern District of New York, subsequent to the issuance of the Patent, and "prior to the commencement of this suit".

██ Notwithstanding, there was but one installation prior to the commencement of this suit, the attack by the defendant on the validity of the Patent constituted a threat to continue, and if the Patent be found to be valid justifies injunctive relief. Johnson v. Foos Mfg. Co., 6 Cir., 141 F. 73, 78, 79; Morton Trust Co. v. Standard Steel Car Co., 3 Cir., 177 F. 931, 932.

The Patent in suit relates to conveyors for small articles and more particularly to mail chutes, and as stated by the Patentee in his specification "it has for its object to provide a simple and efficient means for keeping the chute free to an adequate extent from the reception of objects other than mail matter at the point at which the mail is inserted. Further objects of the invention are to provide a device of this character that will not alter the appearance of the chute from the exterior and will not be likely to get out of order when unattended for a considerable period."

The Patentee further says, "the invention resides in certain improvements and combination of parts, * * * the novel features being pointed out in the claims * * * ."

Further on, in his specification, the Patentee says: "Experience in the operation of such mail chutes has developed the fact that for some strange reason people are tempted to and do drop into the mailing aperture bits of trash, such as match sticks, chewing gum wrappers and other paper fragments. In addition to these acts of mischievous or unthinking persons, others maliciously deposit therein lighted cigarettes which have heretofore gone through to the collection receptacle and damaged the mail matter therein to the extent, in some instances, of kindling a fire that destroyed the entire contents. The chute constitutes a natural chimney, as will be at once recognized, creating a draft that induces combustion and increases the fire hazard. Furthermore, both the collection

box and the chute panels being accessible only to representatives of the Post Office, those who discover the fire are usually powerless to reach it."

"My invention provides means whereby the letters are properly directed as heretofore from the mailing aperture into the chute, but these undesirable objects so deposited are automatically diverted and discharged to the exterior so that they fall to the floor at the feet of the offending person."

In one embodiment of the invention as shown in the Patent in suit the bottom of the mail chute pocket 8 is provided with a discharge opening, and this lower discharge aperture 11, and the upper letter aperture 9, have a partition 12 disposed therebetween which does not extend entirely through the pocket, as the standard full length wall in plaintiff's Exhibit 4 did, but is cut off.

The photostat of Figure 2 of the old Cutler patent, (Exhibit 4), is typical as showing the front downwardly inclined wall 8 and the rear wall 11, which together form the "letter passage" through which letters pass from the letter aperture to the chute itself, the wall 8 being a single uninterrupted plate from the letter aperture to the chute.

Plaintiff contends that the novelty of the Patent in suit over the Cutler patent or the standard method, is the cutting off of the wall or partition and the provision of an opening 17 in Figure 4 and the opening 17a in Figure 8, and the cutoff partitions 12a and the rear plates 15 form the "letter passage" 16. In Figure 4 above 17 are shown two upwardly inclined rods 18, which have spaces there between as shown in Figure 6, which rods serve to guide the letters, but may also slide cigarettes to the "letter passage" even though the spaces between the rods serve to permit other cigarette stubs to fall between the rods 18. In Figure 8 a letter guide 24 is used and a cigarette may tumble through the opening 17a, but on the other hand this also may cause a cigarette stub to slide down the guide 24 into the "letter passage" 16.

The problem was solved by the Patentee of the Patent in suit, wherein he said " * * * I provide in passage 16 a trap communicating therewith and adapted to intercept cigarette stubs and other small articles of litter deposited in the receiving aperture." The words "letter passage" as used in the Patent in suit, mean the letter passage of a mail chute consisting of the front wall plus the rear wall and the space between the wall.

In the embodiment of the Patent shown in Figure 4, the trap consists of the hinged and weighted fingers 20, and the open spaces between the bars 18 at 17, the fingers 20 and bars 18 forming a V. The fingers 20 are in the "letter passage" and extend substantially across the same. In the other embodiment of the Patent, shown in Figure 8, the trap is again in the "letter passage" and extends across the same, in the form of the plate 20a, pivoted by ears 22 at 23 and suitably balanced, to normally maintain its position across the "letter passage", the opening 17a providing a discharge opening, the cut off upper end of the partition 12a forming this opening, and the side edge of the portion shown in the double lines in Figure 8 by the leading line of the reference 17a again forming a V therewith. The conception then brought into being was a V trap, the right hand leg of which is the weighted intercepter across the "letter passage", and the left hand leg of which is a discharge opening. or space brought into being by cutting off the partition in order to receive unimpeded the articles intercepted and diverted by the other leg of the V.

Considered from the standpoint of function there are two passages: the "letter passage", extending from the letter aperture to the inside of the chute and a bypass passage having one part in common with the "letter passage" at its lower part diverting from the "letter passage" at the left side of the V and into the lower part of the pocket, to prevent mail matter from taking a direction between the upper aperture of the pocket, and the lower discharge aperture of the pocket, when such is provided.

The Patentee provided a device or interspersed means in the form of the bars 18 in Figure 4 which prevents the letters from going towards the lower aperture 11, these bars 18 directing the letters to the "letter passage", and similarly, a device 24 in the form of an inclined plate in Figure 8 is provided, which likewise deflects the letters to the "letter passage" and prevents the letters from descending to the lower aperture 11. These devices or interspersed means, intermediate the lower and upper apertures, direct pieces of mail matter into the chute while permitting relatively small

objects to be diverted and fall through the lower discharge aperture of the pocket.

The pocket is about one inch in depth, and the chute itself is about two inches in depth.

In operation of a mail chute it is desirable to have the incoming letters of any floor take an almost vertical direction, as by so doing, vertically descending letters from the floors above will not block, and the same is accomplished by giving the incoming letters a direction when entering the chute substantially parallel with the letters descending vertically from above.

The problem was not so easy of solution as would appear at a first glance, because the mail chute has to take various sizes of mail matter namely, a very thin postcard, a curled postcard, a letter one-half inch in thickness, and short and long letters, and to accomplish this, it was necessary to place a movable member in the narrow space and to have this together with the other parts therein delicately hung, so that they would operate for all the functions.

No references were cited against the application in the Patent Office. The original Claims 1 to 6, both inclusive, were allowed, and later Claims 7 to 9, both inclusive, were allowed. Claims 7, 8 and 9 found their counterpart in the disclosure of the original specification.

The mechanical law of operation of the structural parts of the Patent in suit is: the proper mail matter deposited in the receiving aperture of the pocket takes the direction of the "letter passage", and the pivoted right hand leg of the V trap yields and permits the mail matter to move into the chute, whereas this same leg of the V trap automatically intercepts, diverts and discharges litter in a discharge opening formed by cutting off the inclined front wall within the pocket.

Claim 1, of the Patent in suit, reads as follows: "1. The combination with a mail chute having a mail receiving aperture leading to the interior of the chute and a delivery aperture below the same adapted to discharge exteriorly of the chute, of means intermediate said apertures adapted to be displaced by a piece of mail matter inserted in the mail receiving aperture for directing small objects similarly introduced to the discharge aperture."

Claim 2 speaks more specifically of a "weighing device", "operating in the passage to normally direct light foreign matter deposited in the mailing aperture to the delivery aperture but adapted to be displaced by mail matter and permit its passage to the chute."

Claim 3 is still more specific in speaking of "a gravitationally operated pivoted element in the passage acting normally to direct light objects deposited in the mailing aperture to the delivery aperture, but adapted to be displaced by mail matter so deposited and permit its passage to the chute."

Claim 4 describes "a partition between the apertures by which mail matter is guided from the receiving aperture into the chute, said partition being provided with an opening and a yielding device adjacent thereto adapted to be displaced by such mail matter but acting to divert small light articles through the opening to the discharge aperture."

Claim 5 is more specific in setting forth "a partition between the apertures by which mail matter is guided from the receiving aperture into the chute, said partition being provided with an opening and a pivoted deflector adjacent thereto normally positioned to divert small and light articles inserted in the mailing aperture through the opening to the discharge aperture but adapted to be displaced by mail matter similarly inserted."

Claim 6 again makes reference to "a weighing device operating in the passage to normally direct light foreign matter deposited in the mailing aperture to the delivery aperture but adapted to be displaced by mail matter and permit its passage to the mail receiving element."

Claim 7 describes the trap in the "letter passage", "communicating with said passage adapted to intercept cigarette stubs and other small articles of litter deposited in the receiving aperture."

Claim 8 describes the upper and lower apertures and "a device arranged between the two apertures, adapted to block access of usual mail matter inserted through the upper receiving aperture from passage to the lower discharge aperture while permitting passage of small objects, such as litter, similarly introduced to and through the discharge aperture."

Claim 9 relates to "interspersed means intermediate said apertures for directing pieces of mail inserted in the mail receiving aperture into the chute while permitting relatively small objects similarly introduced

to pass it and fall through the discharge aperture."

Each of the Claims is for a combination, and is so denominated.

Defendant's alleged infringing structure (Exhibit 2) is clearly shown in the drawings (Exhibits 9, 10 and 11), in which the elements of the plaintiff's embodiments and defendant's structure are separately compared.

In Exhibit 9 the top group represents separate views of the separate part 24 of Figure 8 of the Patent in suit, and the bottom group represents views of the separate parts 18 of Figure 4 of the Patent in suit. Both of these serve to guide the mail matter.

The center group represents defendant's corresponding structure, and shows an inclined plate having an additional inclined plate affixed thereto. The means employed by the defendant are, therefore, the same as the means 24 and 18 of plaintiff's Patent. They perform the same, and produce the same result, that is, to guide at a proper inclination the letters inserted in the letter receiving aperture of the pocket to the "letter passage".

In Exhibit 10 is shown the cutoff partition 12 or 12a of the Patent in suit. The view below that represents the defendant's structure, and shows the corresponding delivery apron of the defendant, which has the same cutoff partition and the same inclination thereof as that of the plaintiff. The cutoff partition of defendant's structure serves to guide letters at an almost vertical direction into the mail chute itself. The cutoff part, that is, that part which was above the upper edge of the partition, having been removed, forms a discharge opening. In this, it differs from the single front wall of the old letter mail chute shown in Exhibit 4 in which there is no discharge opening.

The means of the respective parts of plaintiff and defendant are identical, both being cutoff plates. Identical works are accomplished by both in sliding the letters almost perpendicularly. A discharge opening for the dropping of litter is provided in both by the cutting off of the old and standard partition and the result is the same in both cases.

In Exhibit 11, plaintiff's plate 20a and defendant's corresponding plate have ears with pivot holes which enable the plate to be pivotally suspended to the inside of the letter pocket. The ears are bent at right angles to the plate, which is moved on its pivot by a letter, in the patented structure by the letter striking the plate, and in the defendant's structure by striking the angular parts of the plates integral therewith and bent up from the plate. The remaining part of defendant's plate acts to intercept and divert litter as shown by the missile sliding down the plate. In both cases the means are plates with ears pivotally supported, and do the same work, that is, they permit letters to pass and divert other matters. The results obtained in both cases are identical. The weighing device and the gravitationally operated device of the defendant, are also shown in Exhibit 13. The weighing device shows the pivoted member of the defendant's apparatus counterbalanced by a weight, and the envelope coming down on the right hand side of the pivot, and there is that weighing action. The lower section of that drawing, under the heading "Gravitationally operated pivoted element" shows another aspect of the defendant's pivoted member indicating that gravitation is operating on these weights to secure a desired balancing effect.

On Exhibit 12, under the titles "The Story of the Letter" and "The Story of the Cigarette", the assembly of the separate parts is shown.

Defendant contends that it does not infringe as in its device the "letter passage" is not completely closed, but merely has intermediate the ends of the passage, the swinging member shown in Exhibits 11 and 13, which plaintiff's expert referred to as the "different looking thing", and on Exhibit 11 marked "deft's intercepting and diverting discharge pivot-plate", and contends that the swinging member C of the Teevan Patent No. 626,251 operates the same as the closure or swinging flap 20a in the Patent in suit, and if the defendant be held to infringe, then the Patent in suit would be void as anticipated by the Teevan Patent aforesaid.

This is not so, as part C of the Teevan Patent does not work to intercept divert and discharge any foreign matter in respect to mail matter, nor is that the way it is intended to work, and as shown, in my opinion it could not work that way.

I will discuss the Teevan Patent later, when I consider the question of validity.

Defendant further contends that all of the Claims, 1 to 7, both inclusive, re-

quire an intercepting and diverting means, and that in defendant's structure there is a clear unobstructed pass between the letter receiving aperture at the top, and the exit opening at the bottom, so that for the most part and under almost all circumstances a cigarette stub or other litter, will pass directly through from the top opening ·to the bottom opening without being intercepted or deflected by anything, but that does not seem to me to relieve ·the defendant from infringement, because they may be intercepted by the pivot plate and diverted, and there is also provided in the center of the space a projecting fin and the litter will be diverted over to the pivoted member and then guided down and out. Therefore, it seems to me that these means are equivalent for the directing or diverting means of the Patent in suit. It does not seem to me that defendant is relieved by its contention that the letter guiding means 24 of Figure 8 or 18 of Figure 4 and 5 of the Patent in suit are old, because we are here dealing with a combination, the elements of which may all be old, if the combination as here, is new.

In the defendant's device there is an intake aperture, guiding features, a discharge opening, an opening into the chute, and a pivoting member, all of which cooperates in the manner, and for the purpose of securing, and do secure, the result that is set forth in the description and Claims of the Patent in suit.

The defendant infringes the Patent in suit.

We will now consider the question of validity.

Defendant offered seventeen alleged prior art patents, most if not all of which, were of non-analogous arts.

Some of these patents are rather complex, and with the exception of the Teevan Patent and the McAllister Patents, were not discussed or considered on the trial, and as to the McAllister Patents, they were discussed by the defendant · only in its brief, therefore, it is very doubtful if I am required to give the remaining patents any consideration. United States v. Societe Anonyme des Anciens Establissements Cail, 224 U.S. 309, 322, 32 S.Ct. 479, 56 L.Ed. 778.

I will not stand on the technicality, but will briefly consider all of the said Patents, so offered, in evidence, in their entirety.

Patent No. 104,043 to Edwin T. Marsh. This patent relates to a letter box to be mounted on the inside of an office door. It discloses a chute G through which newspapers and large mail matter may be passed, and which will drop on the office floor. This chute has a bottom E which is pivoted on its lower end and is manually liftable at the mail intake aperture so as to provide a passage into the letter box through which letters may be passed. The arrangement is purely manual and no automatic means are provided for differentiating between materials of different kinds.

Patent No. 402,028 to George B. McAllister. This patent relates to a letter box for street cars adapted to be affixed to the side of a trolley car, so that persons in the street may mail letters by dropping them into this device while the car is in motion. The letter intake is open to the ·weather and rain is likely to fall through the opening, and if this happens, the rain drops down into a separate compartment, but the mail matter will be diverted and enter the mail box. No means are provided for differentiating between mail matter and litter. The only differentiation being between mail matter and rain drops.

Patent No. 416,828 to Joseph Corbett, Assignor to The Automatic Selling Machine Company. This patent relates to a vending machine, and means are provided for differentiating between coins of different size, in the following manner. The coin slot 42 is made of a size to permit the introduction of the proper coin, and the slot is connected to a steep chute or slide with an open section 44 entering into the tube 41 and to the return or delivery plate 45. The size of the opening 44 is so gauged that coins smaller than the proper coin will fall through the opening and be delivered to the receiving plate 45. If a coin passes the opening 44 it will continue down to the chute 43 and be delivered to the end of the pivoted member 47, which has flanges 54 bent flat in an inclined fashion so that the exit space at the lower end of the flanges 54 will be narrower than the intake end. As a consequence, any coin which is of a size to go all the·way down to the chute 43, will enter the space between the flanges 54. If the coin is thinner than the normal coin it will slide through the contracted space on the lower end of the flanges 54, then be shot over the end of the pivoted member at 50, drop into the chute 58, and be delivered at 59.

If the proper coin reaches the flanges 54 it will not be able to pass out on the narrow lower end, but will be retained between the flanges, and as a consequence, tip the pivoted member to the dotted line position shown, and deliver such proper coin to the apparatus which leads to the delivery of the vended goods. To permit the pivoted member to swing downwardly, when loaded with a proper coin, the chute 43 is cut away at 60, as shown, to prevent interference by the floor of the chute with the coin. At the same time a triangular horn 61 is provided, which will enter the space G on the pivoted member and guarantee the ejection of the coin from the pivoted member by forcing the coin out between the flanges 54. The only differentiation here, is between coins of different diameters and definite thicknesses. There does not seem to be any differentiation as between different weights, as any coin so thin and of such small diameter as to reach the pivoted member will be shot across so quickly so as not to actuate it, but a coin of the proper size stick in the end of the pivoted member and thereupon by its weight change the position of that member.

Patent No. 430,626 to Joseph Warren Cutler. That patent relates to a letter box. It discloses a mail receiving box of a mail chute, and means for preventing the introduction therein of expansible mail matter (such as newspapers or folded envelopes) which, if permitted to enter the chute, would be apt to expand and choke it. Fig. 7 and Fig. 9. show different means for securing this result, but in both cases a bulky material, if introduced, would cause the pivoted members H of Fig. 7 and J' of Fig. 9 to swing towards each other and choke the entrance to the mail receiving aperture. The question as to the introduction of other mail matter, and the diverting of litter, is not presented.

Patent No. 435,626 to Edward J. Graves. This patent relates to a coin operating device for vending cigars and other articles. It discloses a coin receiving slot R opening on to a chute P, so arranged that a coin of the proper size and weight will come down the chute P and enter upon the coin receiving shelf I of the pivoted member H, and such member H will then swing downwardly as shown in dotted lines to eject the coin, and at the same time actuating the wheel G, which controls the two-way escapement DD' to secure the delivery of the vended article. Should the coin, introduced at R, be thinner than a normal or proper coin, it will slip through the restricted opening I and drop into a coin box. If the coin introduced at R should be larger or heavier, than the proper coin, the hinged chute section P will be depressed and such heavy coin will be ejected, as shown in dotted lines in Fig. 1. Differentiation between coins and other articles is not provided for, in this patent, and the only differentiation being between coins of different size and value.

Patent No. 479,005 to Virgil A. Krepps, Assignor by mesne assignments to Daniel I. Caldwell and Robert Mills, Trustees, and Harry W. Mason. This patent relates to a vending machine which shows in Fig. 2 a coin receiving slot 14 leading to the vending apparatus below, but having an opening on its under side, near the intake, through which coins of a size, less than normal, may pass to the lower diverting plate 17 from which the money is dropped off the end on to the upper shelf 18. The only selection in this patent is between coins of different dimensions.

Patent No. 519,385 to Alexander Keith, Jacob P. Tirell and John W. Willard, Assignors to said Willard. This patent relates to a coin-controlled vending machine, and is for an improvement upon the Krepps patent No. 479,005. Fig. 2 shows a coin intake very similar to that of the Krepps patent. It permits the entrance of a coin of certain dimensions and provides for the ejection of coins of less size than normal through the slot H' of the shute H. This patent does not teach the separation of letters from litter.

Patent No. 695,922 to Benjamin F. Fowler. This patent relates to a coin-controlled apparatus and is intended to differentiate a coin of proper size from a coin of too great diameter or too thin a coin or a washer with a central opening. A slot 5 will permit too small a coin to drop and be discharged through the chute 6. Larger coins will pass beyond the opening 5 and reach another opening 7 of the same diameter as the normal or proper coin, but having a slightly raised post 9, which will prevent coins from falling through the opening 7, while permitting a washer of the same size to be discharged through 7. The normal coin will continue traveling along the chute and be discharged at its end to actuate the vending mechanism. There is a thin slot 13 beyond the opening 7, which is intended to discharge a very thin disc. No diverting, hinged or gravi-

tational device, and no differentiation has been shown, as between coins and articles of other sorts, in that patent.

Patent No. 934,347 to Alfred I. Perpignan and George H. Riebelman. That patent relates to a package-chute and shows an electro-magnetical control of exits from a package-chute in a building. Whatever goes into the chute at any opening 14 is bound to go all the way down the chute, unless barred at some exit 16, which has a pivoted door 15 controlled by the electro-magnetic device. No distinction is shown in that patent between packages and any other article, and nothing is segregated. All that is shown is the ability to discharge articles at some desired floor.

Patent No. 947,843 to John Page. That patent relates to mail delivery chute and teaches the doing manually what the Perpignan patent No. 934,347 taught to do electro-magnetically. At the different floors there is a flap in the delivery chute controlled by a lever at an upper floor. The actuation of the lever displaces a delivery arm 5 across the chute, in such a way as to bar any article of any sort, without distinction, from passing further through the chute into a letter box.

Patent No. 986,985 to Leonard Horinko. This patent relates to a coin-operated mechanism for a vending machine, which is very inadequately described, as the drawings do not show many of the letters of reference appearing in the specification. It seems to me, however, that the patent teaches that a coin, if of certain dimensions, may be passed through a coin slot into a vertical chute 34' leading into an inclined chute 34. If the coin be smaller than normal, it is supposed to drop through an opening 38 in the chute 34, and be discharged through the vertical chute 36. If the coin does not drop through the opening 38, it will reach the upper member of the pivoted device 35 and strike the buffer 39, and be diverted back into the lower channel of the pivoted device, to secure exit in that fashion, into chute 36. A coin of the proper weight passes into the upper member of 35, and by its weight will tip the device 35 to the position shown in dotted lines and then will pass out of 35 into the right hand slot 34, and drop down to the trigger 42 of the vending apparatus to actuate the same. All that is shown in that patent is the separating of small coins from coins of the proper size, in a vending machine, but not the segregation of one article, or one class of articles, from another.

Patent No. 1,042,458 to George B. McAllister, Assignor to McAllister Street Car Mail Box Company. That patent relates to mail receptacles and enlarges the ideas disclosed in the McAllister patent No. 402,028. That patent shows a mail box on the outside of a trolley car, which is open to rain, but the rain is not permitted to enter the box itself, but as indicated at 28 in Figs. 1 and 2, and also at 18, the rain is dropped down into a special section, where it can run off. This patent has nothing to do with a mail chute and could not be adapted to a mail chute for the reception of mail matter and the interception and diverting and discharging of litter.

Patent No. 1,135,264 to William Cox. That patent relates to fare-boxes, and shows a hand held fare-box in which there is an examining chamber b having a transparent wall through which the conductor can see the coins inserted in the slot c. Pivoted shutters e, e', and pivoted fingers j and h' are arranged so that after a fare has once reached the bottom of the fare-box, having passed through j and h', it cannot be extracted from the fare-box, as the fingers j and h' close upon themselves, and the shutters e and e' move to close the inside of the slot c, when the fare-box is inclined or inverted for the purpose of extracting the coin. Whatever can be inserted in the slot c will pass to the bottom of the box k.

Patent No. 1,182,963 to William O. Beck and Alfred U. Hoefer, Assignors by mesne assignments, to Western Electric Company. That patent relates to attachment for coin-collectors, and shows a method of separating small coins from large coins. In Fig. 1 a small coin will pass through an opening 10 in a chute 5, which will deliver a normal size coin to a receptacle 13 for vending purposes. The object was to accept both large coins and small coins and send them to the same receptacle where their joint reception would cause the actuation of the vending mechanism.

Patent No. 1,932,987 to Hugo E. Pruss and Lewis R. Steinberg, Assignors by mesne assignments to Federal Mail Chute Corp. That patent relates to mailing pockets for mail chutes, and discloses a mail receiving pocket or casing for a mail chute and is directed to the holding up of newspapers or foldable and expandable envelopes, so that they cannot enter the mail

chute with consequent danger to their expansion and choking of the chute. As shown in Fig. 2, the introduction of a too bulky package at 18, will swing the flap 19 to the rear and expose the obstructing shelf 23 to the incoming article. A thin letter would naturally go through the pocket into the chute, but a package or folded envelope of too great an expandable thickness will push 19 to one side and the article will be stopped at barrier 23. As shown in Fig. 5 a too bulky package will push the flap 33 to the left and expose the barrier 35 to its downward passage. As shown in Fig. 6 the introduction of a bulky package will move the pivoted flap 36 to the right and in so doing will move the upper end 44 of the lever pivoted at 39 to the right swinging the lower end 40 of such pivoted member to the left totally closing the opening 42 of the chute. In that patent the only differentiation is between different classes of mail, and not between mail matter and litter. There is not even a segregation, separation, or diverting of different kinds of mail. All that patent teaches, is the definite closure of the mail pocket against the admission of improper mail matter to the chute.

Patent No. 1,933,752 to Robert D. Parks and Glenn W. Hildenbrand, Assignors to National Vending Company. That patent relates to coin chutes for vending machines, more particularly to bottle vending machines. It discloses a coin device with dimensioned openings 6, 6a and the spaced separation between the walls of 6, 6a, for the prevention of the insertion of abnormally large coins or abnormally thin coins. Only coins of the correct diameter and thickness, or a lesser diameter and thickness may enter the coin receiver, and start down through the chutes 4 and 5. A coin that is too small will be laterally moved into the V-shaped deflector 12 and will drop into the discharge trough 13 for delivery to a receptacle, not shown. A coin or token that is magnetic will be moved by permanent magnet 14 and directed so as to fall into the trough 13 and be discharged. If the token be of correct size, but one that is a washer with a central hole, it will be picked up and removed by the fingers 15 from the chute 5. Only a coin of the proper diameter and thickness and material and construction may enter the machine and pass through the chute 4 into the chute 5 and be delivered at the lower end to the receiving part 16 for conditioning the machine for operation.

That patent shows no provision for the segregation of litter or other undesirable material from the coin chute.

Due to the fact that these patents were not explained on the trial, I have gone to greater lengths than I anticipated in analyzing the same. The result of such analysis, however, clearly shows that none of these patents disclosed the idea of a passage like the "letter passage" of the Patent in suit, for directing a letter into a chute, or the like, and having superposed upon a part of the passage another passage bounded by an intercepter, the latter passage acting as a by-pass passage, the intercepter being thus in the first passage and acting to intercept foreign articles, to divert them away from the main passage and to discharge them into a discharge opening formed in one of the walls of the first passage. In none of the foregoing seventeen patents, which I have analyzed, is there found this community of passages with a diverting trap.

None of these patents anticipate, and the Patent in suit, shows invention over each of them.

■ The combination of none of those patents would, without extensive changes, function as does the Patent in suit to accomplish the same result and, therefore, they do not anticipate.

This leaves for consideration but one patent as follows, and this is the one upon which the defendant places its chief reliance, and while it may be, and for the sake of argument but not so finding, I will assume that it is for an analogous art:

Patent No. 626,251 to James Teevan and James F. Hoyne. This patent relates to a letter box. The patentees in their specification say "this invention has reference to improvements in letter boxes and is designed for the purpose of preventing the surreptitious removal or extraction of the contents of same; also, to prevent the contents being injured by the introduction of lighted matches, burning cigars or cigarettes, and such like." That patent shows a chute A composed of wood, metal, or other suitable material attached to the inside of the front plate B of the letter box, so that its upper open end coincides with the ordinary letter-slot. A rectangular flap C is hinged at the free end of the chute A and so balanced that a gentle pressure from above (such as a letter descending) will cause it to open. The flap C is maintained in a normally horizontal

position by means of the sheet weight G, secured to the end of the pivot rod H outside the chute. The flap and weight are rigidly attached to said rod. As shown in Fig. 3 a number of slots are provided in the bottom side of D of sufficient width to allow matches, burning cigars, cigarettes and such like to pass through, but not too wide to interfere with the free passage of letters, periodicals and such like over its surface. A lighted match or burning cigar or cigarette, if thrown into the letter-slot passes harmlessly through the slots into a receptacle E fixed underneath the chute. To more effectually fulfill the first object of the invention there are hinged on the lower edge of the chute, a second rectangular flap F having a row of teeth F', projecting parallel to the bottom of the chute and a row of depending teeth F² almost at right angles to the first.

That the principal object of the invention was to prevent the surreptitious extraction of the contents of the box is apparent from its reiteration.

Teevan, it is true, had the fundamental broad idea of separating cigarette butts, or lighted cigars or matches, from the mail which might be deposited in the box.

It is likewise true that Teevan shows a mail receiving aperture, and guiding means to get the letter into the box, which guiding means defendant calls a trap, but what in reality are a number of slots in the bottom D, through which cigarette butts, or matches, which might be received in the receiving aperture, may fall, but that is, in no sense, the type of the trap of the Patent in suit.

There is no chute in Teevan, in the sense that that word is used in the Patent in suit and, therefore, there is not a passage leading to a chute. If A of the Teevan patent was a chute, as the same is described in the Patent in suit, a letter would not go into such a chute in the Patent in suit; but because it is a box, a letter will go into it, in Teevan.

The chute, in the Patent in suit, is but 2⅛ inches in depth, and if a letter was passed through the flap of the Teevan patent, it could not fall down, it could not tip into and through the chute of the Patent in suit.

The letter flap C of Teevan, does not intercept, divert and discharge away from the "letter passage", the litter injected, into a mail chute. It was not intended to work that way, and as shown, cannot work that way.

The Claims of the Patent in suit do not, in my opinion, read on the Teevan patent, even literally, and therefore it cannot be held to anticipate.

While it is true that some of the elements of the combination of the Claims of the Patent in suit are old, and some old elements are found both in the Teevan patent and the Patent in suit, the combinations are different, function differently, and produce a new and useful result.

Even if, however, the result was old that would not be determinative, as a combination is still patentable if the result is old, but has been produced in a better way, as in a more facile, more economical, and more efficient manner. New York Scaffolding Co. v. Whitney, 8 Cir., 224 F. 452, 456.

The Teevan patent did not teach the art the solution of the mail chute problem, with reference to the ejection of matter foreign to letters.

By the law of structure of the Teevan patent is presented a co-action of parts totally different from the cooperative law of the Patent in suit.

It is worthy of note that while defendant praises the Teevan patent, it more highly compliments the Patent in suit, by imitation.

The Teevan patent does not anticipate.

Finally, defendant contends that there was no invention in the Patent in suit.

Certainly the Patentee, in the Patent in suit, did much more than cut a hole in the bottom of Teevan's letter box to attach to it a chute, as suggested by the defendant.

There is an essential difference in separating by size, and separating things by material and character, such as litter and mail matter, and this was not taught by the coin-vending or rain-draining machines of the patents offered as prior art.

There is invention in the Patent in suit, as in none of the seventeen alleged prior art patents, excluding the Teevan patent, offered in evidence in this case is there suggested any solution of the problem of segregating letters and litter, and the Teevan patent offered in evidence as alleged prior art, on which defendant principally relied, did not teach the use of the letter flap to intercept, divert and discharge

away from the "letter passage" the litter injected into a mail chute.

Much more than mere mechanical skill was required, and was exercised by the Patentee in the Patent in suit, as the problem presented to the patentee of the Teevan patent was much simpler than that which was presented to the Patentee of the Patent in suit, who solved his problem by a combination not even suggested by Teevan.

Plaintiff has had a fair degree of success, that is to say, commercial success, and this has been due to the invention of the Patent in suit, and not merely to mechanical skill.

The Patent in suit is valid and infringed.

The plaintiff is entitled to a decree against the defendant, with injunction and costs, and the usual order of reference.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law, in accordance with this opinion, for the assistance of the Court, as provided by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the Civil Rules of this Court.